### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### ABILENE DIVISION

| | | |
|---|---|---|
| **BRIAN THOMAS LAMBERT,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 1:24-CV-159-H** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| *Defendant.* | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I.    STATEMENT OF THE CASE

Plaintiff Brian Thomas Lambert ("Lambert") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security for denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). (Plaintiff's Complaint ("Pl's Compl.") [doc. 1] at 1.) On December 20, 2022, Lambert protectively filed for DIB, alleging that his disability began on October 3, 2017. (Transcript ("Tr.") at 16; *see* Tr. 183-87.) Lambert's application was both denied initially and on reconsideration. (Tr. 16; *see* Tr. 79-86, 87-95, 103-06, 109-11.) Lambert then requested a hearing before an ALJ. (Tr. 16; *see* Tr. 135-41.) On December 7, 2023, the Administrative Law Judge ("ALJ") held a telephone hearing and Lambert's alleged onset date was amended to June 25, 2022. (Tr. 16; *see* Tr. 32-53, 162-68.) Subsequently, on March 15, 2024, the

ALJ found that Lambert was not disabled within the meaning of the SSA. (Tr. 13-26.) Lambert then filed a request for review of the ALJ's decision to the Appeals Council. (Tr. 9-10.) On July 18, 2024, the Appeals Council denied Lambert's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-5.) Lambert subsequently filed this civil action seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* of the SSA, and numerous regulatory provisions. *See* C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial or gainful activity. 42 U.S.C. §§ 423(d), 1328c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled and, thus, entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *Id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985.) Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past

work experience. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999). A claimant's RFC is defined as the most that a person can do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment. *Id.*

In reviewing the Commissioner's denial of disability benefits the Court's review is "exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, [when considering the record as a whole,] and whether the ALJ applied the proper standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600 602 (5th Cir. 2012); *Legett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In this context substantial evidence is "more than a mere scintilla of evidence, but less than a preponderance." *Ripley v. Chater*, 67 F.3d 553, 555 (5th Cir. 1995) (internal citations omitted). A finding of no substantial evidence is appropriate only if no credible evidentiary sources or medical findings support the decision. *Boyd*, 239 F.3d at 704. While the court shall scrutinize the record to determine whether substantial evidence is present, "the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment" for that of the Commissioner's. *Sweeten v. Astrue*, No. 3:11-CV-934-G (BH), 2012 WL 3731081, at *6 (N.D. Tex. Aug. 13, 2012) (citation omitted), *report & recommendation adopted*, 2012 WL 3735884 (N.D. Tex. Aug. 29, 2012); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.  ISSUE

In his brief, Lambert presents one issue—whether the ALJ erred in failing to consider Plaintiff's obstructive sleep apnea as an impairment?  (Plaintiff's Brief ("Pl.'s Br.") [doc. 18] at 4.)

### IV.  ALJ DECISION

As set forth above, in a decision dated March 15, 2024, the ALJ concluded that Lambert was not disabled within the meaning of the SSA.  (Tr. 13-26.)  At Step One, the ALJ found that Lambert had not engaged in substantial gainful activity since June 25, 2022, the amended alleged onset date.  (Tr. 18.)  At Step Two, the ALJ found that Lambert had the following severe impairments: "degenerative disc disease of the lumbar and cervical spine, esophagitis, gastroesophageal reflux disease (GERD), Barrett's esophagus, irritable bowl syndrome (IBS), right hip labral tear and chondroids, post-traumatic stress disorder (PTSD) and history of traumatic brain injury (TBI)."  (Tr. 18 (emphasis omitted).)  Next, at Step Three, the ALJ determined that Lambert did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Listing.  (Tr. 19.)  As to Lambert's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; cannot climb ladders, ropes, and scaffolds or crawl; can understand, remember and carry out simple tasks; and occasionally interact with coworkers, supervisors, and the public.

(Tr. 20 (emphasis omitted.)

At Step Four, the ALJ found that Lambert was unable to perform his past relevant work. (Tr. 24.)  Subsequently at Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Lambert could perform based on his age, education, work

experience, and RFC. (Tr. 24-25.) Accordingly, the ALJ found that Lambert was not disabled as defined in the SSA since June 25, 2022,[1] the alleged onset date.

## V.    DISCUSSION

In his brief, Lambert argues, *inter alia*, that the ALJ erred in failing to consider sleep apnea as an impairment. (Pl.'s Br. at 4-5.) Specifically, Lambert contends that, in failing to address Lambert's sleep apnea anywhere in his decision, the ALJ erred because Lambert's "severe obstructive sleep apnea was not considered an impairment at all, whether severe, non-severe, non-medically determinable, or otherwise." (Pl.'s Br. at 6-7.) In response, the Commissioner frames Lambert's argument as whether the ALJ "should have found that his sleep apnea was a severe impairment." (Defendant's Brief ("Def.'s Br.") [doc. 24] at 5.) The Commissioner further argues that "[s]ubstantial evidence supports the ALJ's determination that Plaintiff's sleep apnea was not a severe impairment, and Plaintiff failed to meet his burden of proving that his sleep apnea was a severe impairment." (*Id.*) Finally, the Commissioner claims that "[r]egardless of whether the ALJ found Plaintiff's sleep apnea to be a severe impairment, substantial evidence from the record fails to support Plaintiff's arguments that his sleep apnea caused any additional work-related limitations." (Def.'s Br. at 6.)

In this case, the Commissioner's argument is misplaced. The issue here is not whether the ALJ erred in determining the "severity" of Lambert's sleep apnea, but whether the ALJ erred in failing to acknowledge or discuss this impairment anywhere in his decision. *See Kimberly P. v.*

---

[1] The ALJ found that Lambert was not disabled since October 3, 2017. (Tr. 25.) However, the Court agrees with Lambert that the October 2017 date identified in the ALJ decision appears to be a scrivener's error. (Pl.'s Br. at 3.) During the telephone hearing, Lambert amended his alleged onset date to June 25, 2022, and the amended date is identified as the amended alleged onset date at the beginning of ALJ's decision and at Step One of the ALJ's analysis. (Tr. 16-18; *see* Tr. 36-37.) Thus, to the extent the October 2017 date is mentioned as the alleged onset date, the Court shall interpret this as referring to the amended alleged onset date of June 25, 2022. *See Dukes v. Colvin*, No. 3:14-CV-173-BF, 2015 WL 1442988, at *4 (N.D. Tex. Mar. 31, 2015) ("In the context of social security cases, errors in the ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent.").

*Kijakazi* No. 3:22-cv-02436-K-BT, 2023 WL 7309497, at \*3 (N.D. Tex. Oct. 13, 2023), *report & recommendation adopted*, 2023 WL 7309430 (N.D. Tex. Nov. 6, 2023).

At Step Two, the ALJ determines whether the claimant has an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). The ALJ only considers those impairments which the claimant has alleged or "about which [the ALJ] receive[s] evidence." *Id.* § 404.1512(a)(1). "The question of the existence of a medically determinable impairment is distinct from, and logically antecedent to, the question of severity." *Kimberly P.*, 2023 WL 739497, at \*3 (citing *Randall v. Astrue*, 570 F.3d 651, 657-59 (5th Cir. 2009) (*per curiam*)); *see Eileen v. O'Malley*, No. 4:23-CV-3404, 2025 WL 1146638, at \*3 (S.D. Tex. Feb. 24, 2025) (noting the "plaintiff bears the burden of showing not only the existence of an impairment, but its severity"); *see also* 20 C.F.R. § 404.1521 ("*After* we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.") (emphasis added). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic testing" and, thus, the impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. If a medically determinable impairment or impairments is found to exist, the ALJ then determines severity. *Id.* "In the Fifth Circuit, an impairment is not severe 'only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.'" *Sweeten*, 2012 WL 3731081, at \*9 (quoting *Stone*, 752 F.2d at 1101).

Here, the ALJ's Step Two analysis was brief. As previously noted above, the ALJ found that Lambert's severe medically determinable impairments were degenerative disc disease of the lumbar and cervical spine, esophagitis, GERD, Barrett's esophagus, IBS, right hip labral tear and

chondroids, PTSD, and history of TBI, and that these impairments limited his ability to perform basic work activities. (Tr. 18.) The ALJ did not identify any additional medically determinable impairments, to include Lambert's sleep apnea. (*Id.*) Furthermore, the ALJ did not provide any explanation or justification as to why Lambert's sleep apnea was omitted from his brief discussion of the medically determinable impairments. (*See id.*) In fact, as identified by Lambert, there is no mention of Lambert's sleep apnea anywhere in the ALJ's decision.

The ALJ's failure to consider Lambert's sleep apnea and to assess whether it was a medically determinable impairment at Step Two is at odds with the record. Lambert claimed disability based, in part, on sleep apnea in his application for benefits, as identified by the state agency medical consultants at the initial and reconsideration level. (Tr. 79-84; *see* Tr. 84-95.) Lambert's sleep apnea was also briefly mentioned at the December 3, 2023 hearing. (Tr. 36.) In addition, Lambert's sleep apnea appears to have been consistently documented. (Tr. 455; *see* Tr. 486, 579, 879, 942, 2862, 2958, 2970, 3052, 3056-58.) For example, the record documents Lambert's sleep apnea concerns, which results in him only getting 3-5 hours of sleep per night of broken sleep, and his corresponding symptoms of exhaustion or tiredness and daytime sleepiness. (Tr. 485; *see* Tr. 603, 876-77, 937, 945, 1128, 1155, 1983, 1996, 2862, 2868, 3056, 3084, 3109.) Moreover, Lambert has received diagnoses of "severe obstructive sleep apnea." (Tr. 1707; *see* Tr. 1703, 2868, 3043, 3052.) The record also shows that he underwent sleep studies for his sleep apnea. (Tr. 1699; *see* Tr. 1983, 2868, 3021, 3043, 3048.) Further, Lambert has been given a fifty percent service-connected Veterans Administration ("VA") rating due to his obstructive sleep apnea.[2] (Tr. 1363.) While the ALJ is not bound by the rating of the VA, it is still "evidence that is

---

[2] *See* Tr. 453; *see* Tr. 484, 1064, 1143, 1157, 1209, 1228, 1273, 1386, 1389-91, 1541, 1548.

entitled to a certain amount of weight and must be considered by the ALJ," which did not occur here.[3] *Clambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The evidence cited above is inconsistent with the ALJ's omission of any discussion of whether Lambert's sleep apnea rose to the level of a medically determinable impairment. The ALJ provided no explanation or justification for failing to address Lambert's sleep apnea at Step Two, despite the evidence in the record. Thus, the final issue is whether the ALJ's failure constitutes harmless error.

It is well-established that "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). In this case, the ALJ's failure to consider Lambert's sleep apnea was not harmless, as he was required to consider all medically determinable impairments, assess their severity, and evaluate their impact at each step of the disability analysis. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(iv); *see also Henson v. Barnhart*, 373 F. Supp. 2d 674, 682 (E.D. Tex. 2005) ("The Commissioner unquestionably must consider all potential impairments.") (citations omitted). Even if the ALJ had found Lambert's sleep apnea to be a non-severe impairment, he would have, nonetheless, been required to proceed to Step Three to consider whether his sleep apnea, as a non-severe impairment, combined with his severe

---

[3] Of note, a previous ALJ decision dated June 24, 2022, considered, *inter alia*, the VA rating and identified Lambert's sleep apnea as a medically determinable impairment. (Tr. 60.) The June 2022 ALJ decision discussing Lambert's sleep apnea found the impairment to be non-severe, in part, based on the assumption that his symptoms would improve with the use of a Continuous Positive Airway Pressure ("CPAP") machine once he had an appropriate mask. (Tr. 60.) However, after this ALJ decision, Lambert has continued to have issues with his sleep apnea, and raised concerns about getting only 4-5 hours of broken sleep (Tr. 877; *see* Tr. 937, 3918), and issues with his CPAP mask making him feel like he was drowning. (Tr. 876-77; *see* Tr. 939, 942-43.)

impairments to meet or medically equal a Listing. Then the ALJ, at Step Four, would have been required to consider the impact the impairment had on Lambert's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

One symptom the ALJ would have considered from the impairment, which was not discussed by the ALJ, is Lambert's tiredness or daytime sleepiness, and the impact this could have when combined with the other impairments on his RFC. (Tr. 877; *see* Tr. 937.) There is no evidence that the ALJ accounted for these symptoms or any other symptoms associated with Lambert's sleep apnea when formulating the RFC. As it is not inconceivable that the ALJ would have reached a different determination absent his Step Two error, the error was not harmless. *See Tipler v. Berryhill*, No. 3:18-CV-2245-B (BH), 2019 WL 2233627, at *15 (N.D. Tex. May 3, 2019) (finding the ALJ's failure to consider Plaintiff's cervical radiculopathy at Step Two without explanation was not harmless because there is no evidence that the ALJ accounted for the effects of Plaintiff's cervical radiculopathy when formulating the RFC), *report & recommendation adopted*, 2019 WL 2234707 (N.D. Tex. May 23, 2019); *see also Fernandez v. Colvin*, No. EP-12-CV-00126-ATB, 2013 WL 1729210, at *8-9 (W.D. Tex. Apr. 19, 2013) (finding the ALJ's failure to consider Plaintiff's hypertension at Step Two, without explanation and in light of the evidence in the record, was not harmless error). Consequently, the case should be remanded.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REMANDED.**

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's

proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## <u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 29, 2025** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 15, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE